**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 12-61694-CIV-ROSENBAUM/SELTZER**

JOAB TOUZIN,

      Plaintiff,

v.

NICHOLAS PATRIARCA, individually,
JOSH BRASSO, individually, and
the CITY OF HOLLYWOOD, a Florida
Municipal corporation,

      Defendants.

_____/

**<u>ORDER</u>**

This matter is before the Court upon Plaintiff's Motion for Summary Judgment on Count III [D.E. 25]. The Court has reviewed the Motions, all supporting and opposing filings, and the record in the case. For the reasons that follow, Plaintiff's Motion for Summary Judgment on Count III is denied.

***<u>I. INTRODUCTION</u>***

This Motion raises the question of whether Police Officer Josh Brasso "seized" Plaintiff Joab Touzin within the meaning of the Fourth Amendment when he grasped Touzin's arm for two to three seconds while repeatedly instructing Touzin to calm down. Under the totality of the particular circumstances in this case, the Court concludes that a reasonable jury could conclude that Brasso did not "seize" Touzin. Accordingly, the Court denies Plaintiff's Motion.

Touzin brings seven claims under 42 U.S.C. § 1983 and Florida law for unlawful temporary

detention, false arrest and imprisonment, and malicious prosecution against Defendants City of

Hollywood Police Officers Nicholas Patriarca and Josh Brasso in their individual capacities, and the

City of Hollywood.  D.E. 1.  The claims arise out of an incident that occurred between Touzin and

Defendant officers on March 1, 2012.  *Id.*; *see also* D.E. 28-1 at 1-2.  Count III, the sole count of the

Complaint on which Touzin seeks summary judgment, asserts a claim under 42 U.S.C. § 1983 that

Defendant Brasso violated Touzin's Fourth and Fourteenth Amendment rights to be free from arrest

in the absence of probable cause.

## *II. MATERIAL FACTS*

On March 1, 2012, Defendant Patriarca patrolled the Hollywood Hills neighborhood, south

of Sheridan Street and West of I-95.  D.E. 27-2 at 3:2-6:3.  The Hollywood Hills area is generally

a residential neighborhood with some businesses and places of worship interspersed.  D.E. 27-2 at

10:20-12:3.

During this general time frame, a rash of burglaries had occurred in the area.  D.E. 27-2 at

6:3-7:6; *see also* D.E. 30-1 at 16:1-:10.  Defendant Brasso was also in the area, conducting

surveillance in relation to the string of burglaries. D.E. 30-1 at 13:10-:24.  The reported *modus*

*operandi* of the burglaries involved subjects first knocking on residences in order to ascertain

whether they were occupied.  If they were not, the subjects would either proceed to the back and

force entry, or call an accomplice with a vehicle to help rob the residence.  D.E. 27-2 at 8:1-:20,

10:9-:19.  On March 1, 2012 however, Defendant Patriarca was unaware of any calls or complaints

about suspicious persons knocking on doors.  D.E. 27-3 at 34:2-35:1.

Patriarca stated that as he was driving in the area of the neighborhood, when he observed

Touzin walking on the grass between two houses.  D.E. 27-2 at 31:10-:22; 32:14-:18.  Although

Patriarca could not ascertain where Touzin had come from, based on where Touzin was walking and the mannerisms he observed, Patriarca stated, he believed "something to be afoot." D.E. 27-2 at 35:20-:21, 34:15-:17.  Without further investigating the area from which Touzin emerged to determine whether any indications of criminal activity existed, Patriarca began to follow Touzin. D.E. 27-2 at 40:4-43:25.  In reality, Touzin had just exited the front of his house at 4500 Taft Street, D.E. 31-1 at 26:25-27:2, and was walking to a nearby Subway restaurant in order to collect a set of car keys from his aunt, who was working there at the time.  D.E. 31-1 at 35:18-:21; D.E. 31-3 at 1:22-:23.

During the course of the fifteen-minute walk, Touzin spoke on a cell phone and at one point removed his shirt.  D.E. 27-2 at 44:13-:17; *see also* D.E. 31-2 at 46:25-47:2, 48:3-5.  According to Patriarca, Touzin was also looking around as he walked. D.E. 27-2 at 44:4-:9.  Patriarca concluded that such glances, combined with the fact that Touzin was simultaneously speaking on a cellular telephone, were indicative of behaviors associated with the burglaries that were occurring in the area. D.E. 27-2 at 44:4-45:2.

At some point during the course of Patriarca's observation of Touzin, Defendant Brasso was alerted via police radio and decided to respond without first contacting Patriarca for more information.  D.E. 30-1 at 27:3-:18, 30:11-31:3.  Based on his suspicion of a burglary, Patriarca decided to make contact with Touzin as he exited the Subway restaurant.  D.E. 27-3 at 29:14-31:4; D.E. 31-3 at 2:18-3:4.

Patriarca got out of his vehicle and asked Touzin where he lived.  D.E. 27-3 at 42:1-:17; D.E. 31-3 at 3:1-2.  In response, Patriarca claims, Touzin immediately became hostile, D.E. 27-3 at 42:21-:23, and responded with words to the effect of, "Why do you want to know where I live?"  Patriarca

further claims that Touzin approached him in an aggressive manner, repeating that he did not have to tell Patriarca where he resided, and stopped only when Patriarca raised his hand as an indication to do so. D.E. 27-3 at 47:13-50:1. After Patriarca lifted his hand to instruct Touzin to stop, Touzin turned and began to walk away. D.E. 27-3 at 50:17-:19. At this point, Defendant Patriarca indicated, he believed the encounter to have been concluded and noted that Touzin "had turned and walked away." D.E. 29-1 at 15:1-17:10.

Meanwhile, however, Brasso had entered the shopping center where the Subway was located, and he claims to have observed Touzin approach Patriarca in a very agitated, even angry, state. D.E. 30-1 at 41:4-42:4. According to Brasso, Brasso left his car to make contact with an allegedly vulgar and aggravated Touzin in an attempt to calm him down. D.E. 30-2 at 9:7-10:24;D.E. 29-1 at 21:17-22. Brasso described Touzin as pacing in the general area of Patriarca. D.E. 30-2 at 11:10-:21, 16:7-:22. When Brasso approached Touzin, Brasso stated, Brasso repeatedly requested that Touzin calm down and relax and "grasped [Touzin's] right arm . . . in an attempt to calm him down," a tactic that had worked for him in the past. D.E. 28-1 at 8; D.E. 30-2 at 26:8-18. According to Brasso, the grasp was "an attempt to deescalate [the situation] . . . [and] not [] an attempt to take anybody into custody." D.E. 30-2 at 7:8-8:12.

Brasso claims that Touzin then became even more upset and told Brasso to "get off," striking Brasso's arm that was then grasping Touzin. D.E. 28-1 at 8; D.E. 30-2 at 28:10-29:24. This interaction was very brief, lasting only two to three seconds. D.E. 30-2 at 28:9-:12. Brasso further reiterated that the touch was an attempt to calm him, not to detain him, and that he had never in the past received such a reaction to that particular deescalation technique. D.E. 30-2 at 26:8-:18. Based on the intensity of the slap, Brasso deemed it criminal conduct and advised Touzin that he was under

-4-

arrest.  D.E. 30-2 at 24:4-25:22, 37:2-:6; D.E. 29-1 at 25:1-:3; D.E. 28-1 at 8.  While Brasso was

attempting to place Touzin in custody, Touzin allegedly tensed and resisted slightly, at which point

he was redirected to the ground, handcuffs were applied, and Touzin was arrested.  D.E. 29-1 at

25:1-26:5; D.E. 28-1 at 8. Touzin was charged with misdemeanor battery and resisting arrest without

violence.  D.E. 28-1 at 1.[1]

### III. SUMMARY JUDGMENT STANDARD

"Summary judgment procedure is properly regarded not as a disfavored procedural shortcut,

but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just,

speedy and inexpensive determination of every action.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327

(1986).  Where the record reveals no genuine issue of material fact and the movant is entitled to

judgment as a matter of law, summary judgment should be granted.  Fed. R. Civ. P. 56(c).  An issue

is genuine if "a reasonable trier of fact could return judgment for the non-moving party."

*Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (quoting

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)).  Similarly, a fact is material if it

"might affect the outcome of the suit under the governing law."  *Id.* (quoting *Anderson*, 477 U.S. at

247-48).

In considering a motion for summary judgment, the court views the facts in the light most

favorable to the non-moving party and draws all reasonable inferences in his favor.  *See Davis v.*

*Williams*, 451 F.3d 759, 763 (11th Cir. 2006).  "The mere existence of a scintilla of evidence in

---

[1]Touzin's account of what occurred differs substantially from Defendants' descriptions of
the encounter.  As Touzin correctly acknowledges, however, for purposes of determining
Plaintiff's Motion for Partial Summary Judgment, the Court must accept the facts as Defendants
assert them since here, no basis for not doing so exists.

support of the plaintiff's position will be insufficient; there must be evidence on which a jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. In conducting this analysis, the court must not weigh conflicting evidence. *See Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007) (quoting *Carlin Commc'n, Inc. v. S. Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986)).

The moving party shoulders the initial burden of showing the absence of a genuine issue of material fact. *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). Once the moving party satisfies this burden, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs., L.L.C.*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, "the non-moving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Accordingly, the non-moving party must go beyond the pleadings and respond with evidence of specific facts suggesting that a reasonable jury could find in his favor. *Shiver*, 549 F.3d at 1343. But even where an opposing party neglects to submit any alleged material facts in controversy, the court must still satisfy itself that the evidence of record supports the uncontroverted material facts that the movant has proposed before granting summary judgment. *Reese v. Herbert*, 527 F.3d 1253, 1268-69, 1272 (11th Cir. 2008); *United States v. One Piece of Real Prop. Located at 5800 S.W. 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1103 n.6 (11th Cir. 2004).

## *IV. ANALYSIS*

_____Touzin's Motion for Partial Summary Judgment centers on the assertion that Brasso's two-to-three second grasping of Touzin's arm amounted to a seizure under Fourth Amendment, and

Defendants lacked probable cause, or even arguable probable cause, for executing a seizure at that time. While this claim encompasses several issues, the Court need focus on only the first one: whether, as a matter of law, Brasso's two-to-three second grasping of Touzin's arm constituted a seizure under the Fourth Amendment. Because the Court concludes that, under the facts viewed in a light most favorable to Brasso, no seizure occurred, this finding is dispositive of Touzin's Motion, and the Court must deny summary judgment.

The Fourth Amendment guarantees citizens the right to be free from "unreasonable searches and seizures." U.S. Const. amend. IV. Both the United States Supreme Court and the Eleventh Circuit have issued numerous decisions outlining the contours of what constitutes a seizure for purposes of the Fourth Amendment.

These cases establish that the mere fact that an interaction between law-enforcement officers and a citizen occurred does not necessarily mean that a seizure happened. *United States v. Baker*, 290 F.3d 1276, 1277 (11th Cir. 2002) (citing *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968)). In this regard, a law-enforcement officer's approaching of a person and asking of questions, without more, does not amount to a seizure. *United States v. Drayton*, 536 U.S. 194, 200 (2002). As demonstrated by the allegation in this case that Touzin began walking away from Patriarca after Patriarca questioned him, "[t]he societal pressure to stop and speak with law enforcement" is not considered a "sufficient restraint of liberty" to trigger constitutional protection. *Baker*, 290 F.3d at 1278.

Instead, "the crucial test is whether, taking into account all of the circumstances surrounding the encounter, the police conduct would 'have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.'" *Id.* (quoting *Florida v. Bostick*, 501 U.S. 429, 437 (1991); *see also Drayton*, 536 U.S. at 201 ("If a reasonable person would feel free

to terminate the encounter, then he or she has not been seized."); *United States v. Ramirez*, 476 F.3d 1231, 1238 (11th Cir. 2007) ("a person being questioned by police is not seized if a reasonable person would feel free to terminate the encounter") (internal quotation marks omitted). The essential element of a seizure occurs when "the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *Terry v. Ohio*, 391 U.S. 1, 20 n.16 (1968).

Touzin directs the Court to *California v. Hodari D*, 499 U.S. 621 (1991), to support his argument that Brasso seized Touzin within the meaning of the Fourth Amendment when he grasped his arm for two to three seconds. In *Hodari D.*, the defendant was with a group of other youths when an unmarked police car approached. The group fled, and law-enforcement officers chased them. When the defendant realized that an officer was right in front of him, the defendant tossed away a small rock that turned out to be crack cocaine. Thereafter, the defendant was charged criminally and moved to suppress the crack-cocaine evidence. Although the trial court denied the defendant's motion, the state appellate court reversed, holding that the defendant had been seized within the meaning of the Fourth Amendment when he saw the officer running towards him before the defendant threw the crack-cocaine rock. Because the state conceded that the officer did not have reasonable suspicion to stop the defendant as of that moment (before the crack-cocaine rock was thrown), the state appellate court concluded that the crack cocaine had to be suppressed as the fruit of an illegal seizure.

The Supreme Court reversed, holding that the officer's pursuit of the defendant did not constitute the type of show of force that effects a seizure under the Fourth Amendment. In explaining the basis for its decision, the Supreme Court opined in passing that "[t]he word 'seizure' readily bears the meaning of a laying on of hands or application of physical force to restrain

movement, even when it is ultimately unsuccessful." *Hodari D.*, 499 U.S. at 626.  Touzin urges that

the this remark requires the conclusion that Brasso's grasp of Touzin's arm constituted a seizure

within the meaning of the Fourth Amendment.

But, in context, the Supreme Court's comment refers to the limited situation where an

officer's actions would be understood by a reasonable person as intending and unsuccessfully

attempting to arrest or otherwise detain a person.  Thus, the officer's intent in engaging in the

challenged touching, as would be understood by the reasonable, objective recipient of the touching,

drives the determination of whether the touching effects a seizure:

> There can be constructive detention, which will constitute an arrest,
> although the party is never actually brought within the physical
> control of the party making an arrest.  This is accomplished by merely
> touching, however slightly, the body of the accused, by the party
> *making the arrest and for that purpose*, although he does not succeed
> in stopping or holding him even for an instant; as where the bailiff
> had tried to arrest one who fought him off by a fork, the court said, "if
> the bailiff had touched him, that had been an arrest . . . .

*Id.* at 625 (quoting A. Cornelius, Search and Seizure 163-64 (2d ed. 1930) (footnote omitted by

Supreme Court)) (quotation marks omitted) (emphasis added).

Where an officer touches another for a reason other than detention and that touching may be

understood as not being for the purpose of detention by a reasonable person, no seizure occurs within

the meaning of the Fourth Amendment.  To hold otherwise would be to characterize as a seizure any

type of touching by an officer of an individual, regardless of the nature or reasonably understood

purpose of the touching.  Such a rule would sweep far too broadly.

Here, Brasso testified that he grasped Touzin's arm for two to three seconds in an attempt

to calm him down, a purpose unrelated to "seizing" him.  Moreover, Brasso stated, he repeatedly

advised Touzin to "calm down" before, during, and after the grasping of Touzin's arm.  According to Brasso, he did not initiate the contact with the intent to effectuate an arrest or otherwise restrict Touzin's freedom to walk away.[2]  Viewed from a reasonable person's perspective, a jury could conclude on these facts that Brasso's grasping of Touzin's arm should not have conveyed to Touzin that he was not free to leave, and thus, that it did not effect a Fourth Amendment seizure.  For this reason, Touzin's Motion for Summary Judgment on Count III must be denied.

### V.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment on Count III [D.E. 25] is **DENIED**.

**DONE and ORDERED** at Fort Lauderdale, Florida, this 14th day of November 2013.

ROBIN S. ROSENBAUM
UNITED STATES DISTRICT JUDGE

copies:

The Honorable Patrick M. Hunt

Counsel of Record

---

[2]Defendant Brasso admitted in his testimony that neither he nor Defendant Patriarca had sufficient evidence to arrest Touzin for any crime at the time that they began interacting with him.  D.E. 30-2 at 23:2-24:13; 30-3 at 7:11-:14.  Specifically, Defendants conceded that insufficient evidence existed to arrest Touzin for disorderly conduct or burglary.  *Id.*